UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TASHEA GRAHAM AND ANTONIO LUCAS,

    Plaintiffs,

v.

SPARTAN AUTO GROUP, LLC dba VICTORY MITSUBISHI, DSL MOTORS LLC and CREDIT ACCEPTANCE CORPORATION,

    Defendants.

Case No.:

---

# COMPLAINT

Plaintiffs, Tashea Graham ("Graham") and Antonio Lucas ("Lucas" and together with graham, "Plaintiffs") bring this action to secure redress against unlawful, unfair, abusive, and deceptive business practices engaged in by defendants Spartan Auto Group, LLC dba Victory Mitsubishi ("Victory Mitsubishi"), DSL Motors LLC (the "DSL Motors" and together with Victory Mitsubishi, the "Dealer Defendants") and Credit Acceptance Corporation (the "Lender" and together with the Dealer Defendants, "Defendants") relating to a financed automobile purchase transaction and alleges as follows:

## NATURE OF THIS ACTION

1. In or around January 2025, Plaintiffs found advertised for sale with the Dealer, a new 2024 Mitsubishi Honda Outlander Sport, Vehicle Identification Number JA4ARUAU2RU022584 (the "Vehicle"). The parties came to terms on Plaintiffs' financed purchase of the Vehicle. Acting as a broker, the Dealer Defendants arranged for insurance on the Vehicle, or so Plaintiffs thought. The next day, the catalytic converter was stolen from the

Vehicle, resulting in a cascade of revelations revealing a deep and multifaceted fraud at the hands of the Dealer Defendants and ultimately a repossession of the Vehicle by the Lender.

2. In this action Plaintiffs seek, among other things, statutory and actual money damages against Defendants for, *inter alia*, violations of the federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the New York Motor Vehicle Retail Installment Sales Act, Sec. 302 *et. seq.* ("NY MVRISA"); New York General Business Law §§ 349 and 350, NY Vehicle & Traffic Law §17 ("VTL §417"), breach of express and implied warranties, violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, and common law claims for fraud.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 15 U.S.C. § 1640.

4. This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

5. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

6. Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and the Dealer maintains offices, transact business, and is otherwise found in this district.

## PARTIES

7. Plaintiffs are both natural people residing in Yonkers, New York.

8. Upon information and belief, the Victory Mitsubishi, a car dealership, is a domestic corporation organized and existing under the laws of the State of New York with a place of business located at 4070 Boston Rd., Bronx, NY 10475.

9. Upon information and belief, DSL Motors, a car dealership, is a domestic corporation organized and existing under the laws of the State of New York with a place of business located at 5803 Kings Hwy, Brooklyn, NY 11203.

10. Upon information and belief, the Lender is a national banking association and, among other things, provides automobile loans and loan servicing nationwide including in the State of New York.

11. The Lender is, upon information and belief, assignee of Plaintiffs' contracts with the Dealer Defendants and, as a result, is subject to all claims and defenses pursuant to federal and New York law.

## FACTS

### *The Vehicle Sale*

12. On January 8, 2025, Ms. Graham visited Victory Mitsubishi's dealership located 4070 Boston Rd., in the Bronx and was introduced to a sales representative identified as "Micheal Soto" to discuss Ms. Graham's potential purchase of the Vehicle.

13. Plaintiffs were then introduced to individuals referred to as "managers" named "Andrew" and "Miguel".

14. Victory Mitsubishi's representatives informed Ms. Graham, in sum and substance, about what they referred to as a "3 month program" under which an estimated monthly payment for the Vehicle would be calculated, but that after 3 months Ms. Graham could trade in the Vehicle towards a more affordable purchase or keep the Vehicle with lower monthly payments.

15. Compelled by the Victory Mitsubishi's ruse, Ms. Graham agreed to purchase the Vehicle under the "3 month program".

16. In addition to selling Plaintiffs the Vehicle and arranging for financing, Victory Mitsubishi represented to Plaintiffs that it would arrange for insurance, thereby acting as an insurance broker.

17. It was represented by Victory Mitsubishi to Ms. Graham that she would need to pay for insurance, registration and license plates for a total of $1,065.00 with no additional upfront costs.

18. It was represented by Victory Mitsubishi that Ms. Graham would need a co-signer and so it was agreed that Mr. Lucas, Ms. Graham's boyfriend, who does not have a driver's license, would act as the cosigner.

19. Mr. Lucas was not present at Victory Mitsubishi's dealership and so Ms. Graham and Michale Soto drover the Vehicle to Mr. Lucas' workplace to, as represented by Michale Soto, "sign some paperwork".

20. Mr. Lucas was presented with a series of papers and told where and when to sign and initial.

21. Mr. Lucas was not given an opportunity to review any of the documents before signing.

22. Mr. Lucas was not directly presented with copies of any of the documents to which his signature or initials were allegedly affixed.

23. Later, back at the dealership, Ms. Graham was presented with a series of papers and told where and when to sign and initial.

24. Ms. Graham was not given an opportunity to review any of the documents before signing.

25. Ms. Graham was not directly presented with copies of any of the documents to which her signature or initials were allegedly affixed but was told copies would later be emailed to her.

26. Ms. Graham was handed keys to the Vehicle to which license plates, and a temporary registration had been affixed.

### *The Vehicle Insurance & the Catalytic Converter Theft*

27. During closing of the sale, Mr. Soto represented to Ms. Graham that a Geico insurance policy had been obtained for the Vehicle.

28. On January 11, 2025, Ms. Graham started the Vehicle and heard a very loud, irregular sound from the engine's exhaust.

29. Ms. Graham initially thought that the Vehicle was defective and so she recorded a video and sent it to Mr. Soto who told her to bring it back to the dealership and they would look at it.

30. On January 13, 2025, Ms. Graham brought the Vehicle back to Victory Mitsubishi, was told that the source of the noise was a stolen catalytic converter and that she would need to file a police report and make an insurance claim.

31. That day, Ms. Graham went to the police to file a report and was confused to learn that the Vehicle was not registered to her or to Mr. Lucas but instead, was registered to Victory Mitsubishi.

32. To try and find out more information, Ms. Graham contacted the Lender but was even more confused when she was told that the Lender had no account for her.

33. Ms. Graham then contacted Victory Mitsubishi to find out what was happening. After first having been given the run around, Ms. Graham was told that it would be fixed.

34. Approximately an hour later, Ms. Graham called the Lender back and was told that there was now an account in her and Mr. Lucas' name. Ms. Graham was also told by the Lender that it was assigned electronically signed sales documents. This was immediately suspicious to Ms. Graham because she and Mr. Lucas signed sales documents with a pen and paper, not electronically.

35. That same day, January 13, 2025, Ms. Graham received two letters in the mail, both from Geico Insurance. The first letter was addressed to Ms. Graham and advised, in sum and substance, that her application for insurance was denied. The second letter was addressed jointly to "Michael A. Charles" and Ms. Graham, at Plaintiffs' address, confirming the issuance of an insurance policy on the Vehicle. Plaintiffs do not know "Michael A. Charles".

36. Ms. Graham called Geico and was told that there was in fact no insurance in place as fraud was suspected.

37. Ms. Graham returned again to Victory Mitsubishi to confront it with all she had learned. Confronted with the unraveling fraud, "Andrew", Victory Mitsubishi's representative, assured Ms. Graham that it would be fixed.

38. Plaintiffs were first directed to take the Vehicle to a nearby repair shop where a "temporary catalytic converter" would be installed.

39. Plaintiffs then returned back to Victory Mitsubishi's dealership and were told to come back two days later, and all the issues would be fixed.

40. Still very suspicious, Plaintiffs returned a day early on January 14th. Plaintiffs asked a manager named "Andrew" who Michael Charles was, the individual listed on the insurance. Andrew claimed that he didn't know who Michale Charles was but that it was likely a mistake because sometimes "things slip through the cracks" and to come back the next day and

everything would be fixed, that she shouldn't worry and that she had "catalytic converter coverage".

41. On January 15, 2025, Plaintiffs returned to Victory Mitsubishi's dealership as directed and asked to see Andrew but were told he was not working that day. Plaintiffs called Andrew on his cell phone, but he did not answer. Andrew did text back and told Plaintiffs that "Miquel" would be there to take care of Plaintiffs.

42. When Plaintiffs met with Miguel and asked if he was up to speed on what was happening with the Vehicle, he said that he was not. Miguel walked away from Plaintiffs and made a phone call. Eventually, Miguel addressed Plaintiffs and represented that an insurance broker had only obtained "temporary insurance". Plaintiffs asked Miguel to provide the name of the purported insurance broker, but he refused to do so. Miguel assured Plaintiffs that the broker would secure new insurance and that the stolen catalytic converter would be covered.

43. Time passed and nothing happed. Frustrated and with no faith that Miguel or anyone else was honestly trying to help them, Plaintiffs left the dealership.

### *Forgery and Fraudulent Credit Terms Discovered*

44. Plaintiffs obtained copies of the sale document from the Lender and discovered that among the documents was a Retail Installment Simple Finance Charge Agreement (the "RISC") which was not the same document she and Mr. Lucas signed.

45. The RISC was materially different from the document Plaintiffs signed including the following:

   a. The "Creditor- Seller" is identified as DSL Motors in Brooklyn, not Victory Mitsubishi in the Bronx;
   b. The sale price of the Vehicle is listed as $30,318.00, substantially more than advertised and agreed upon sale price;

    c. The itemization of amount financed section includes a $1,333.00 "Extended Warranty or Service Contract" Plaintiffs did not want, did not ask for and did not agree to buy;

    d. The RISC is dated January 13, 2025. However, Plaintiffs signed sales documents on January 8, 2025, when they were told by Victory Mitsubishi that financing had been secured and that the deal was complete;

    e. The electronic signatures on the RISC were not Plaintiffs' and so are forgeries.

*<u>Vehicle Repossession</u>*

46. Defendants failed and refused to correct their fraud, and so Plaintiffs made no car payments.

47. On March 24, 2025, the Vehicle was repossessed by the Lender.

48. On or about June 2, 2025, Plaintiffs were notified by the Lender that the Vehicle was sold and that Plaintiffs remained liable for a $17,637.33 deficiency balance.

49. At all relevant times Defendants acted willfully and in bad faith.

50. The unlawful actions described herein harmed Plaintiff.

**FIRST CAUSE OF ACTION**
**<u>VIOLATIONS OF TILA</u>**
(15 U.S.C. § 1601 *et. seq.* TILA)

51. Plaintiffs reallege and incorporate each of the above allegations as if fully set forth herein.

52. Plaintiffs' transaction as described herein was a consumer credit transaction within the meaning of the TILA, and Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

53. Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

54. Defendants are creditors within the meaning of TILA and Regulation Z, 15 USC § 1602(f) and Reg Z § 226.2(a)(17).

8

55. The RISC lists a motor vehicle, an article of personal property, as collateral.

56. The RISC is a written agreement, payable in more than four installments.

57. The finance charge indicated on the RISC exceeds $1,000.00.

58. The copy of the RISC that was provided to Plaintiffs is inconsistent with oral and written disclosures made by the Dealer on the date of the transaction.

59. Defendants failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the loan as required under TILA §§ 1631 and 1632 and Regulation Z.

60. The required purchase of the addons and increase in the sale price as conditions of financing are "finance charges" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

61. As a result of Defendants' failure to properly include these and/or other fees and charges as finance charges, the sale price, finance charge, amount financed, and APR disclosed in the RISC are all materially misstated, in violation of TILA and Regulation Z. e.g. § 1638(a)(2) through (5) and §226.18(b), (d), (e), and (h).

62. Defendants have failed to provide Plaintiffs with clear and conspicuous disclosures of the terms of the loan as required under TILA and Regulation Z. e.g. 15 U.S.C. § 1632(a), § 1638(a), and Regulation Z, e.g. 12 C.F.R. § 226.17(a)(1).

63. As a result of Defendants' incomplete, inaccurate, and materially misstated disclosures, Plaintiffs have suffered actual damages, including but not limited to additional charges, some of which are additional fees corresponding to no legitimate good or service and some of which correspond to products that Plaintiffs did not want or need, and all of which Defendants added to the transaction incident to the extension of credit.

64. Had Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiffs would not have agreed to purchase the Vehicle on

the terms and conditions imposed on them by Defendants and instead would have sought to purchase a vehicle without the unwanted and unnecessary additional charges imposed on them.

65. Additionally, had Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiffs would have sought and obtained an alternate transaction.

66. For these reasons, Defendants are liable under TILA and Regulation Z (see, e.g. 15 U.S.C. §§ 1640 and 1641) for statutory damages, actual damages, attorneys' fees, litigation expenses and costs, for a declaratory judgment that they have violated TILA and Regulation Z, and for such other or further relief as the Court deems appropriate.

67. The Lender, upon information and belief, is assignee of the contracts entered into between the Dealer Defendants and Plaintiffs as a result, is subject to all claims and defenses as the TILA violations set forth herein are clear upon the face of the documents assigned.

**SECOND CAUSE OF ACTION**
**<u>VIOLATIONS OF NEW YORK MVRISA</u>**
(N.Y.P.P.L. § 301 *et seq.*)

68. Plaintiffs reallege and incorporate each of the above allegations as if fully set forth herein.

69. The Dealer Defendnats are a each "retailer seller" within the meaning of MVRISA §301(3).

70. The transaction as described above involved a "retail installment sale" within the meaning of MVRISA §301(4).

71. MVRISA expressly incorporates all TILA disclosure requirements, providing, in addition to all of its other requirements that "[a]ll items required to be disclosed by the act of congress entitled "Truth in Lending Act" and the regulations thereunder, as such act and regulations may from time to time be amended." §302(5)(1).

72. As set forth above, Defendants violated numerous TILA provisions.

73. As set forth above, the RISC provided to Plaintiffs were in gross violation of TILA's requirements.

74. The violations set forth herein were both knowing and willful.

75. Defendants had ample opportunities to correct the violations but failed to do so.

76. For all of the reasons stated herein, under MVRISA § 307, Defendants are barred from recovering any credit service charge, delinquency, or collection charge on the RISC and Plaintiff is entitled to costs and attorney's fees.

**THIRD CAUSE OF ACTION**
**<u>DECEPTIVE TRADE PRACTICES</u>**
(N.Y. Gen. Bus. Law § 349(h))

77. Plaintiffs reallege and incorporate each of the above allegations as if fully set forth herein.

78. Plaintiffs are both persons within the meaning of N.Y. Gen. Bus. Law § 349(h) who have been injured by reason of the deceptive acts or practices of Defendants.

79. Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

80. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

81. Upon information and belief, the Dealer Defendants routinely hide the true cost of borrowing from its customers by, as in Plaintiffs' case, misstating the amounts financed.

82. Upon information and belief, the Dealer Defendants routinely forge the signature of consumers.

83. Upon information and belief, the Dealer Defendants routinely mislead consumers into believing that affordable automobile purchased could be made more affordable through the bogus "3 month program".

84. The Dealer Defendants' conduct and statements were materially misleading.

85. These deceptive acts and practices were committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

86. As a result of these violations of NYGBL §349, Plaintiff suffered pecuniary and non-pecuniary harm.

87. Upon information and belief, the Dealer Defendants' violations were willful and knowing and committed in bad faith.

88. For these reasons, Plaintiffs are entitled to actual damages, three times the actual damages up to $1,000.00, costs and reasonable attorneys' fees pursuant to NYGBL § 349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

**FOURTH CAUSE OF ACTION**
**FALSE ADVERTISING**
(N.Y. Gen. Bus. Law § 350)

89. Plaintiffs reallege and incorporate each of the above allegations as if fully set forth herein.

90. Pursuant to General Business Law §350-a(1), the term "false advertising" means advertising if such advertising is misleading in a material respect.

91. The Dealer Defendants engaged in unlawful "false advertising" prohibited under General Business Law §350-a(1) by making representations, either by statement, word, design, device, sound or any combination thereof, to Plaintiffs and the public -- online and on the

dealership lot, that were materially misleading including, but not limited to, that the sale price of the Vehicle was thousands of dollars less than the price it eventually charged.

92. This false advertising was committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

93. The Dealer Defendants' false advertising was done knowingly and willfully and committed in bad faith.

94. The Dealer Defendants' advertising was misleading in a material respect by failing to reveal that the advertised sale price for the Vehicle would not be honored and or would require the purchase of additional products such as the add-ons.

95. The Dealer Defendants' advertising was misleading in a material respect by failing to reveal that the advertised price would not be honored and required purchase of the add-ons.

96. As a result of the Dealer Defendants' false advertising, Plaintiffs have been injured and seeks actual damages, three times the actual damages up to $10,000.00, costs and reasonable attorneys' fees pursuant to NYGBL § 350 as well as declaratory judgment that the Dealer Defendants' practices are false advertising pursuant to General Business Law §350-a.

## FIFTH CAUSE OF ACTION
## COMMON LAW FRAUD

97. Plaintiffs reallege and incorporate each of the above allegations as if fully set forth herein.

98. The Dealer Defendants asserted false representations of material facts as set forth above, including but not limited to:

    a. that the agreed sale price would be honored;

      b. that the documents signed with pen and paper by Plaintiffs were the actual sale documents;

      c. that the only upfront costs were $1,065.00 for insurance, registration and license plates; and

      d. That Plaintiffs could make the Vehicle purchase more affordable through the "3 month program";

      e. that adequate insurance on the Vehicle was secured.

99. Upon information and belief, the Dealer Defendants knew that the representations were false, or the representations were made with such reckless disregard for the truth that knowledge of the falsity of the statement can be imputed to it. This is because the Dealer Defendants knew that it had inflated the cost of the Vehicle.

100. The Dealer Defendants made these false representations for the purpose of defrauding Plaintiffs and to entice them to buy the Vehicle at a cost many thousands of dollars more than agreed.

101. Had the Dealer Defendants told Plaintiffs the truth, Plaintiffs would not have purchased the Vehicle from the Dealer Defendants.

102. Plaintiffs justifiably relied upon the Dealer Defendants' misrepresentations in agreeing to buy the Vehicle.

103. Plaintiffs suffered damages as a direct result of the reliance upon the misrepresentations.

**WHEREFORE**, Plaintiffs respectfully request this Court to enter judgment in their favor and grant the following relief:

    **(a)**     **On the First Cause of Action:**

Judgment in favor of Plaintiffs and against Defendants for violating TILA awarding (a) statutory damages, (b) actual damages (c) costs; (d) reasonable attorneys' fees, and (e) ordering Plaintiff's obligation under the RISC void;

**(b)** **On the Second Cause of Action:**

Judgment in favor of Plaintiffs and against Defendants for violating the MVRISA barring Defendants from recovering any credit service charge, delinquency, or collection charge on the RISC and Plaintiff's costs and attorneys' fees.

**(c)** **On the Third Cause of Action:**

Judgment in favor of Plaintiffs and against Defendants for violating NYGBL §349 awarding (a) actual damages, (b) three times the actual damages up to $1,000.00, and (c) costs and reasonable attorneys' fees;

**(d)** **On the Fourth Cause of Action:**

Judgment in favor of Plaintiffs and against Defendants for violating NYGBL §350 awarding (a) actual damages, (b) three times the actual damages up to $10,000.00, and (c) costs and reasonable attorneys' fees;

**(e)** **On the Fifth Cause of Action:**

Judgment in favor of Plaintiffs and against Defendants for their fraud in an amount to be proven at trial including, but not limited to, incidental and consequential damages, punitive damages and attorney fees;

**(f)** **Any additional and further relief as may be deemed just and appropriate.**

Dated: Pearl River, New York
September 3, 2025

                                                   **THE LAW OFFICES OF**
                                                   **ROBERT J. NAHOUM, P.C.**
                                                   *Attorneys for Plaintiffs*

By:_____
       **ROBERT J. NAHOUM**
       1 Blue Hill Plaza, Lobby Level, Suite 1509
       Pearl River, NY 10965
       Telephone No.: (845) 450-2906
       Facsimile No.: (888) 450-8640
       Email: RJN@NahoumLaw.com